## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BRICE CANTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:23-cv-00283-NT |
| | ) | |
| BRUNSWICK MAINE POLICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Before me is Defendant Kristin M. Collins's motion to dismiss (ECF No. 22), Defendant Cory Iles's motion to dismiss (ECF No. 23), and the motion to dismiss filed by Defendants Brunswick Police Department, Town of Brunswick, Judith Bean, Joshua Bernier, John Eldridge, Andrew Fitzpatrick, Brian Funke, Paul Hansen, Zachary Huber, Adam Merrill, Patrick Scott, Frances Smith, Thomas Stanton, Scott Stewart, Jerod Verrill, and Christopher Wolongevicz. (collectively, the "**Brunswick Defendants**") (ECF No. 24). For the reasons stated below, Defendant Collins's motion to dismiss is **GRANTED**, Defendant Iles's motion to dismiss is **DENIED**, and the Brunswick Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

Cantrell, representing himself, commenced this action on July 21, 2023. In his Complaint, he names eighteen Defendants: the Town of Brunswick ("**Town**") and its police department ("**Brunswick PD**"); the Brunswick town manager and town clerk; the town lawyer (Attorney Kristin Collins); and multiple employees of the Brunswick PD, including its chief, commander, records clerk, and several officers (including Officer Cory Iles). Compl. at 1–21 (ECF No. 1). Cantrell alleges violations of his civil rights under 18 U.S.C. §§ 241, 242, and 250,[2] the Tom Bane Act, and "Turner vs. Driver case law," as well as fraud and claims based on the denial of requests he made under the Maine Freedom of Access Act ("**FOAA**"). Compl. at 3. He states that there were 250 First Amendment violations on camera on 550 videos, "each a crime committed by Brunswick Police," and there were also failures of the complaint process (fourteen complaints unanswered) and violations of the Defendants' oaths of office. Compl. at 4. He also mentions an "assault and battery" and cover-up that allegedly occurred in February of 2020, Compl. at 4, and he references 42 U.S.C. § 12203, the Americans with Disabilities Act ("**ADA**"), to allege that the entire department violated its prohibition against retaliation and coercion. Compl. at 16.

---

[1] The facts below are drawn from the allegations in the Complaint, which I take as true when deciding a motion to dismiss, and from the exhibits attached to the Complaint. *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). I consider the facts stated in Cantrell's responses to the motions to dismiss but not alleged in the Complaint "only to the extent they shed light on the facts and theories actually alleged" in the Complaint. *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge No. 1821 v. Verso Corp.*, 153 F. Supp. 3d 419, 430 (D. Me. 2015).

[2] Cantrell also either cites a non-existent 18 U.S.C. § 235 or claims that there are "235 rights violations." Compl. at 3 (ECF No. 1).

Cantrell's Complaint is handwritten and at times hard to follow. But his claims appear to stem from Cantrell's run-ins with the Brunswick PD, particularly its police officers' alleged attempts to curtail Cantrell's videorecording of interactions that the police have had with non-party individuals during traffic stops.[3] The Complaint also focuses on Cantrell's subsequent efforts to get FOAA-requested documents and videos from the Brunswick PD and the Town. In short, it appears that Cantrell is trying to "police" the police in Brunswick by videorecording police officers' encounters with civilians and then reporting on them. And he alleges that the Brunswick PD's and the Town's responses to his FOAA requests relating to these police encounters suggest a cover-up conspiracy. Scattered throughout the Complaint are the following relevant allegations (as best I can discern them).

Cantrell alleges that on October 7, 2020, Officer Andrew Fitzpatrick conducted a traffic stop and operating-under-the-influence investigation of an individual named Nathan and his passenger, and Cantrell says he witnessed "excessive use of force." Compl. at 6–7, 10. Apparently Cantrell recorded (or tried to record) the encounter, which also involved Officers Patrick Scott and Christopher Wolongevicz. Compl. at 7. Cantrell later complained to the Brunswick Chief of Police, Scott Stewart, that Officer

---

[3]    Only one of the incidents Cantrell recounts appears to involve Cantrell himself being stopped by the police. Compl. at 4. On February 23, 2020, Officer Adam Merrill arrested him during a traffic stop for suspected operating under the influence. Compl. Ex. 1 at 3–6 (ECF No. 1-1). Merrill handcuffed Cantrell, placed him in the back of the police cruiser, and took him to the police station for a breathalyzer test, which showed that Cantrell had a breath alcohol content of zero. Compl. Ex. 1 at 5–6. At the station, Cantrell also informed Officer Merrill that he had had two shoulder surgeries and a knee surgery. Compl. Ex. 1 at 6. Cantrell's asserted claim for assault and battery may be based on this police encounter. "[T]he tort of assault and battery has come to be called excessive force when it is alleged against a police officer." *McDermott v. Town of Windham*, 204 F. Supp. 2d 54, 72 (D. Me. 2002).

Fitzpatrick's "failure to allow a witness to report wrongdoing" violated Cantrell's First and Fourth Amendment rights. *See* Compl. at 6, 16. According to Cantrell, Chief Stewart "agreed [Cantrell's] rights were violated by Andrew Fitzpatrick" and told Cantrell that Stewart disciplined Fitzpatrick for violating Cantrell's First Amendment and Fourth Amendment rights, but Cantrell says that nothing to that effect was in Fitzpatrick's file. Compl. at 6. Cantrell alleges that "all [was] removed from his report filed Oct. 8th 2020." Compl. at 6. He also alleges that he visited the police station on several occasions to review the Brunswick PD's video footage, but Police Commander Paul Hansen only showed Cantrell one minute of dashcam evidence and one officer's approach—the wrong officer—when Hansen "knew more approaches" existed, including an approach showing officers putting the passenger back in the vehicle. Compl. at 7. Cantrell believes employees of the Brunswick PD have altered or withheld video of the October 2020 event, alleging "multiple evidence of tampering" such as displaying a "fake clock" at the start of the video and hiding the top and bottom of the image with task bars. Compl. at 8.

On another occasion, in September of 2021, Cantrell alleges that he was parked at a closed business and was filming a police traffic stop with a tripod camera when Officer Jerod Verrill approached him and took his photo, and Officer Joshua Bernier informed Cantrell that his vehicle would be towed if he didn't have permission to park there. Compl. at 19. Officer Bernier (and maybe another officer) then "spotlight[ed]" Cantrell's camera.[4] Compl. at 19.

---

[4]     Cantrell states that the driver that was the subject of the traffic stop was handcuffed, and Officer Bernier jerked him by one arm all the way to the police car, thereby injuring the driver's arm.

Beginning in December of 2021, Cantrell had a few run-ins with another Brunswick police officer, Cory Iles. Compl. at 15. In one encounter, Officer Iles was arresting an individual for brandishing a firearm, and Iles ran Cantrell "for warrants for filming" and "refused to identify" himself. Compl. at 15. In March of 2023, it appears that Cantrell was out filming again and Officer Patrick Scott directed him to back away to a cross street and told him to use the crosswalk. Compl. at 15. Officer Iles then wrote Cantrell a summons for "pedestrian in roadway," which Cantrell alleges was done in retaliation (presumably for his filming of police) because another woman crossed as he did and did not get a ticket. Compl. at 15. A couple days later, Cantrell was filming yet another traffic stop, and Officer Iles "threatened [Cantrell] with arrest for walking on [the] sidewalk with [his] camera." Compl. at 15. Cantrell alleges that Officer Iles told Cantrell to get back twenty-five feet—too far away for Cantrell to see or hear—"or get arrested for interference." Compl. at 15.

Cantrell also alleges that on July 2, 2022, Officer Zachary Huber violated Cantrell's First, Fourth, and Fourteenth rights by "threaten[ing Cantrell] for filming." Compl. at 8. When Cantrell emailed Commander Hansen about it, Hansen denied any violation. Compl. at 8. Another time, when Cantrell appears to have been interested in witnessing what he alleges was an illegal search on Union Street, Huber "refused to identify after detaining [Cantrell] at 30 [feet] away." Compl. at 9.

---

Compl. at 19. Cantrell later filed an excessive force complaint based on the driver's injuries. Compl. at 19.

Finally, on July 14th of an unspecified year, Cantrell made an "F___ you" gesture at or near Chief Stewart. Compl. at 21. Chief Stewart gave Cantrell a disorderly conduct warning, and when Cantrell confronted him about his outstanding FOAA requests, Chief Stewart threatened to arrest him. Compl. at 21. Cantrell further alleges that Chief Stewart lied on camera by telling Cantrell that he "can't film police inside police station." Compl. at 6.

Cantrell's allegations against the remaining Defendants all relate to Cantrell's subsequent FOAA requests and what he alleges are wrongful denials or redactions of the documents and videos. In his Complaint, Cantrell suggests that these responses are the product of fraud and conspiracy by multiple Town and Brunswick PD employees. Cantrell has filed at least two "citizen complaints" with the Brunswick PD based on traffic stops he witnessed. *See* Compl. Ex. 1 at 10; Additional Attachs. (ECF No. 13). And he apparently posts the videos that he takes of encounters with Brunswick PD officers on Facebook and YouTube. Compl. at 20.

On October 16, 2023, the Defendants filed their three motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Collins and Iles each filed a motion to dismiss. *See* Def. Kristin Collins's Mot. to Dismiss ("**Collins Mot.**") (ECF No. 22); Def. Cory Iles Mot. to Dismiss Pl.'s Compl. ("**Iles Mot.**") (ECF No. 23). The remaining Defendants filed a joint motion to dismiss. Defs. Brunswick Police Department, Town of Brunswick, Judith Bean, Joshua Bernier, John Eldridge, Andrew Fitzpatrick, Brian Funke, Paul Hansen, Zachary Huber, Adam Merrill, Patrick Scott, Frances Smith, Thomas Stanton, Scott Stewart, Jerod Verrill, and

Christopher Wolongevicz's Mot. to Dismiss ("**Brunswick Mot.**") (ECF No. 24). Cantrell filed two responses, one opposing Officer Iles's motion, Mot. to Dismiss Reply (ECF No. 26), and the other "object[ing] to any and all dismissal motion[s]." Mot. to Dismiss Resp. ("**Pl.'s Opp'n**") 1 (ECF No. 25). Cantrell attached to his combined opposition a document consisting of twenty-eight pages of additional materials relating to his (and others') interactions with various Defendants, and a thumb drive containing six videos. *See* ECF Nos. 25-1 & 25-2. The Defendants all filed replies. *See* ECF Nos. 30–32.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief,' with 'enough factual detail to make the asserted claim plausible on its face.' " *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). This boils down to a two-step analysis. *See Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016). First, I "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). Second, I "must determine whether the 'factual content

7

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In other words, the "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024). "While a *pro se* complaint is held to less stringent standards than one drafted by an attorney, courts need not conjure up unpleaded facts to support conclusory allegations." *Cote v. Murphy*, 152 F. App'x 6, 7 (1st Cir. 2005).

## DISCUSSION

### I.  **Attorney Collins's Motion to Dismiss**

Collins moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Cantrell's complaint fails to include any factual allegations as to Collins and thus fails to state a claim against her. Collins Mot. at 2–3. Cantrell names Collins and her job or title as "town lawyer" in his list of Defendants. Compl. at 2. But after that Cantrell does not mention Collins, either by name or title, anywhere else in the Complaint. Cantrell does not respond to Collins's argument, but he does refer to her in his opposition by claiming that various Defendants "conspired with Kristen Collins, to hide, denied, FOAA, provided spoiled evidence, . . . [and] conspired to hid records of misconduct [Cantrell] witness[ed]," and that "town officials, Kristen Collins emails, letters, all conspired to deprive [Cantrell] of evidence of misconduct [Cantrell] witnessed and recorded." Pl.'s Opp'n at 2, 5. Even if these additional statements contained sufficient factual detail to support Cantrell's

allegations, a Rule 12(b)(6) motion tests the sufficiency of the facts and inferences in the complaint, not a legal memorandum. *See Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge No. 1821 v. Verso Corp.*, 153 F. Supp. 3d 419, 430–31 (D. Me. 2015).

"To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiff to a harm for which the law affords a remedy." *LaPointe v. Soc. Sec. Admin. Comm'r*, No. 2:20-cv-00013-GZS, 2020 WL 376604, at *1 (D. Me. Jan. 23, 2020), *R. & R. adopted,* 2020 WL 1469620. To survive the motion to dismiss, Cantrell's claim against Collins "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Here, beyond identifying Collins by name and role, the Complaint as to Collins is "devoid of further factual enhancement." *Id.* at 678. Accordingly, the claim against Kristin Collins is dismissed.

## II.    The Brunswick Defendants' and Officer Iles's Motions to Dismiss

In their Rule 12(b)(6) motions to dismiss, the Brunswick Defendants and Iles argue that the Complaint should be dismissed for three reasons: (1) because Cantrell's legal conclusions are insufficient to state a claim; (2) because the Complaint lacks sufficient factual allegations to state a plausible claim for relief; and (3) because Officer Iles and the individual Brunswick Defendants are entitled to qualified immunity. *See* Brunswick Mot. at 4, 7, 17; Iles Mot. at 3–6.

### A.    Brunswick Police Department

As a threshold matter, Cantrell's claims against the Brunswick PD are misdirected. "[M]unicipalities and other local governmental bodies are 'persons'

within the meaning of [42 U.S.C. § 1983]." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). But entities that are an integral part of a town, such as police departments, lack legal identity apart from the town and therefore are not properly named as defendants in a Section 1983 action. *See Maddocks v. Portland Police Dep't*, No. 2:15-cv-00168-JAW, 2017 WL 401181, at *7 n.7 (D. Me. Jan. 30, 2017) (citing *Cronin v. Town of Amesbury,* 895 F. Supp. 375, 383 (D. Mass. 1995), *aff'd,* 81 F.3d 257 (1st Cir. 1996)), *R. & R. adopted,* 2017 WL 2225227. Cantrell has named the Town of Brunswick as a Defendant in his suit, so his claims against the Brunswick Police Department are dismissed.

### B.   Thomas Stanton, Judith Bean, Brian Funke, Christopher Wolongevicz, Frances Smith, and John Eldridge

Several of the named Defendants must be dismissed because the Complaint is devoid of any factual allegations against them. The Brunswick Defendants argue that, although Thomas Stanton, Judith Bean, and Brian Funke are named as Defendants, the Complaint lacks factual allegations against any of them. Brunswick Mot. at 7. I agree. I cannot discern any alleged facts that identify the manner by which these three Defendants injured Cantrell in any recoverable way. *See LaPointe*, 2020 WL 376604, at *1. Because Cantrell's claims against Thomas Stanton, Judith Bean, and Brian Funke are not supported by facts, they must be dismissed.

The allegations against Christopher Wolongevicz, Frances Smith, and John Eldridge are scant. Other than being named as Defendants, the only reference to Wolongevicz and Smith in the Complaint is their inclusion in a list of people that Cantrell alleges were engaged in a "U.S.C. Section 241 conspiracy against rights . . .

48 records requests denied, 6 letters of denial service," and Wolongevicz was allegedly shown in some of the dashcam video footage that Cantrell believes was altered. Compl. at 7, 16. As to the allegations against John Eldridge, Brunswick's town manager, Cantrell alleges the same conspiracy but also adds that Cantrell repeatedly went to Eldridge "asking for his help" to get an investigation of the Brunswick PD. Compl. at 10. Apparently Eldridge only called Chief Stewart and refused to do any further investigation, including not conducting Cantrell's requested forensic analysis of the Brunswick PD video that Cantrell alleges was manipulated. Compl. at 10. But Cantrell's dissatisfaction with Eldridge's investigation does not amount to a claim upon which relief can be granted. Cantrell's factual allegations fail to state an actionable claim against Christopher Wolongevicz, Frances Smith, and John Eldridge, and thus the claims against these Defendants are dismissed.

### C.    Remaining Individual Brunswick Defendants and Cory Iles

Officer Iles and the Brunswick Defendants argue that Cantrell's citations to various laws and rights are insufficient to state a claim. Cantrell identifies several statutory bases for his legal claims, and the Defendants are correct that many of them do not provide him a route to legal recovery. For example, he cites three federal statutes: 18 U.S.C. § 241 (conspiracy against rights); 18 U.S.C. § 242 (deprivation of rights under color of law); and 18 U.S.C. § 250 (penalties for civil rights offenses involving sexual misconduct). But those laws are all located in Title 18 of the United States Code, which is the criminal code for the federal government. As a matter of law, "[t]hese statutes do not give rise to a civil action for damages," and "[o]nly the United States as prosecutor can bring a complaint" under them. *Cok v. Cosentino*,

11

876 F.2d 1, 2 (1st Cir. 1989). Cantrell also alleges a "Tom Bane Act violation." Compl. at 3. But the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, is a California state law, and I see no way that it could apply to Cantrell's Maine-based claims.

In addition, it appears that some of Cantrell's excessive force claims refer to actions taken by Brunswick PD officers against other individuals. *See* Civil Cover Sheet (ECF No. 2) (referring to "Oct 7th OUI Nathan Hardy excessive use of force"); Compl. at 6 & Ex. 1 at 1 (ECF No. 1-1). To the extent that Cantrell is alleging claims on behalf of other citizens, those claims must be dismissed. *See, e.g.*, *Feeley v. Hokamson*, No. 2:23-cv-00322-JDL, 2023 WL 6963920, at *1 n.1 (D. Me. Sept. 19, 2023) (explaining that because the *pro se* plaintiff was not an attorney, he could not bring civil rights claims on behalf of another person), *R. & R. adopted,* 2023 WL 6961858.

That said, taking the allegations in the light most favorable to Cantrell as the non-moving party, some of his claims are theoretically actionable. Here, setting aside the statutory labels that Cantrell (a self-represented plaintiff) attributes to his claims, much of the factual content found in Cantrell's Complaint can be reasonably construed as pleading a 42 U.S.C. § 1983 claim based on violations of his constitutional rights under the First Amendment (as it is applied to the states through the Fourteenth Amendment). Cantrell also alleges use of excessive force, conspiracy, and violations of FOAA. I address these potential causes of action in turn.

### 1.    Section 1983 – Violation of First Amendment

To sustain a claim under 42 U.S.C. § 1983, the plaintiff must allege that a person acting "under color of state law" has "deprived [him] of rights, privileges, or

immunities secured by the United States Constitution or by federal law." *Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997). In his Complaint, Cantrell specifically cites the First Amendment and "Turner vs. Driver case law," which I take to mean the constitutional right to record police activity. *See Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017) (holding that the recording of police activity is protected by the First Amendment). The First Circuit has its own body of law recognizing the right to record police activity, namely *Glik v. Cunniffe* 655 F.3d 78 (1st Cir. 2011) and *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014). Together these cases hold that "a police order that is specifically directed at the First Amendment right to film police performing their duties in public"—including during a nighttime traffic stop—"may be constitutionally imposed only if the officer can reasonably conclude that the filming itself is interfering, or is about to interfere, with his duties." *Gericke*, 753 F.3d at 8.

In *Glik*, the First Circuit held that an onlooker possessed a constitutionally protected right under the First Amendment to videotape police officers as they performed an arrest in a public park.  655 F.3d at 82–84. "Concerned that the officers were employing excessive force to effect the arrest, Glik stopped roughly ten feet away and began recording video footage of the arrest on his cell phone." *Id.* at 79–80. The First Circuit concluded that an individual's protections under the First Amendment "encompass[ ] a range of conduct related to the gathering and dissemination of information," and that "[t]he filming of government officials engaged in their duties

in a public place, including police officers performing their responsibilities, fits comfortably within" this range. *Id.* at 82.

In *Gericke*, the First Circuit elaborated on this First Amendment right by holding that an individual has a right to record police officers "carrying out their duties in public" during a traffic stop on the side of the road. 753 F.3d at 3–4, 7. The First Circuit acknowledged that the circumstances of filming a traffic stop on the side of a highway were "worlds apart" from filming an arrest in a public park. *Id.* at 7 (quoting *Glik*, 655 F.3d at 85). Yet it held that the "constitutionally protected right to film police" applied because, as in *Glik*, "the subject of filming is 'police carrying out their duties in public.'" *Id.* (quoting *Glik*, 655 F.3d at 82). The First Circuit was careful to note, however, that its holding did not mean "an individual's exercise of the right to film a traffic stop cannot be limited." *Id.* It explained that "[t]he circumstances of some traffic stops . . . might justify a safety measure—for example, a command that bystanders disperse—that would incidentally impact an individual's exercise of the First Amendment right to film." *Id.* at 8.

Here, Cantrell plausibly alleges that several Brunswick PD officers interfered with his First Amendment right to videorecord police officers carrying out their duties in public places. Read generously, Cantrell's Complaint contains allegations that Brunswick PD officers Cory Iles, Patrick Scott, Zachary Huber, Joshua Bernier, Jerod Verrill, and Andrew Fitzpatrick[5] each engaged in one or more of the following actions:

---

[5] It is a close call whether Cantrell's allegations against Officer Fitzpatrick state a Section 1983 claim. But Cantrell alleges that on October 7, 2020, Fitzpatrick "fail[ed] to allow a witness to report wrongdoing," which he says violated his rights under the First Amendment. Compl. at 16. Cantrell also alleges that Chief Stewart agreed with Cantrell that Fitzpatrick violated the First Amendment

requiring Cantrell to back twenty-five, thirty, or sixty feet away so that he could not see and hear what the officers were doing; "spotlighting" his camera so that it would not pick up what they were doing; threatening Cantrell for filming; and photographing Cantrell while he was filming, presumably in an attempt to intimidate him into stopping. *See* Compl. at 8–9, 15, 19–20. The alleged facts allow an inference that these Brunswick PD officers were trying to thwart Cantrell's protected police-recording activities. It may be that factual development will later show that these officers had acceptable justifications (such as safety) for their actions, but that issue is not for the motion-to-dismiss stage.

Further, Cantrell alleges that several Brunswick PD officers retaliated against Cantrell for exercising his free speech rights. "Speech by citizens on matters of public concern lies at the heart of the First Amendment . . . ." *Lane v. Franks*, 573 U.S. 228, 235 (2014). "It is well established that claims of retaliation for the exercise of First Amendment rights are cognizable under section 1983." *Gericke*, 753 F.3d at 6. Cantrell recounts multiple occasions where he observed and recorded police activity that he believed worthy of recording and/or reporting, and where he submitted complaints about officers to the Brunswick PD (and to the public generally via his YouTube and Facebook videos). Taking his allegations as true and accepting all reasonable inferences, the Complaint plausibly alleges that after Cantrell started

---

and said Fitzpatrick was disciplined. *See* Compl. at 6. Reading these allegations within the context of the entire Complaint, a reasonable inference is that Cantrell was trying to record Fitzpatrick during a traffic stop—one where Cantrell believed he saw a police officer draw his gun on the vehicle's occupants—and Fitzpatrick prevented him from doing so.

recording police encounters and voicing his concerns about the Brunswick PD, members of the Brunswick PD took punitive actions against him like directing him to back into the street and then issuing him a citation for jaywalking.

In addition, Chief Stewart issued Cantrell a disorderly conduct warning and threatened arrest after Cantrell gave Stewart a raised middle finger. "Any reasonable officer would know that a citizen who raises [his] middle finger"—"an all-too-familiar" gesture—"engages in speech protected by the First Amendment." *Cruise-Gulyas v. Minard*, 918 F.3d 494, 495, 497 (6th Cir. 2019); *see Cohen v. California*, 403 U.S. 15, 19, 26 (1971). At this preliminary stage, Chief Stewart's alleged disorderly conduct warning and threat of arrest, after being on the receiving end of Cantrell's rude gesture, can be seen as "an adverse action" meant to "deter [Cantrell] from repeating that conduct in the future" thus infringing his First Amendment right.[6] *Cruise-Gulyas*, 918 F.3d at 497.

Based on the foregoing, Cantrell has sufficiently alleged that several officers either prevented him from exercising his First Amendment right to record the police while they were performing their duties or retaliated against him for exercising that right. *See Maddison v. City of Northampton*, 533 F. Supp. 3d 39, 44 (D. Mass. 2021) (finding that plaintiff sufficiently stated a Section 1983 retaliation claim based on a violation of the First Amendment against him where plaintiff expressed concerns

---

[6]     Cantrell also alleges that Chief Stewart "lied on camera" on July 6th by telling Cantrell that he "can't film police inside police station." Compl. at 6. Whether the First Amendment right to record on-duty police officers extends to inside the police station appears to be an open question in the First Circuit.

about police contact and police told him to stop videotaping officers and issued him a citation). Cantrell's Section 1983 claims for violations of his First Amendment rights against Scott Stewart, Cory Iles, Patrick Scott, Zachary Huber, Joshua Bernier, Jerod Verrill, and Andrew Fitzpatrick survive.

### 2.    Section 1983 – Violation of Fourth Amendment

Cantrell also references "excessive force" in his Complaint. "[A]ll claims that law enforcement officials have used excessive force in the course of an arrest or other seizure should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir. 1990) (citing *Graham v. Connor,* 490 U.S. 386 (1989)). In order to prevail on a Fourth Amendment excessive force claim involving police handcuffing:

> a plaintiff must establish that the defendant's actions in handcuffing [him] were objectively unreasonable in light of the circumstances and the facts known to the officer at the time. This showing must take into account the reasonableness of the officer's actions, viewed from the perspective of a prototypical officer confronted with the same or similar circumstances. All of the attendant facts must be considered.

*Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006) (citations omitted). "The legal test regarding the use of force is whether the force used by [the defendant] was 'consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody.' " *McDermott v. Town of Windham*, 204 F. Supp. 2d 54, 64 (D. Me. 2002) (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 205 (1st Cir. 1990)).

Here, Cantrell's allegations fail to make out a claim for excessive force. First, he cannot bring an excessive force claim on behalf of any of the arrestees that he

witnessed and recorded. Second, to the extent that Cantrell alleges that Brunswick PD officers used excessive force on Cantrell himself, the facts contained in the Complaint do not support that. The only alleged facts that could conceivably constitute a use of force are the Complaint's mention of a February 23, 2020 incident combined with the police report attached to the Complaint detailing how Officer Merrill arrested Cantrell for suspected OUI on that date. *See* Compl. at 4 & Ex. 1 at 3–6. Merrill handcuffed Cantrell, checking for tightness, with his hands behind his back for the trip to the station. And at the station, Cantrell told Merrill that he had had two shoulder surgeries. But nowhere in his Complaint does Cantrell state that the handcuffs were too tight, that he was handcuffed for a long period, that he complained to Merrill about the handcuffing, or that the handcuffs were causing any pain in his shoulders. I am left with no facts to consider in determining whether Officer Merrill's use of force—whatever it was—was objectively reasonable.

In his response to the Brunswick Defendants' motion to dismiss, however, Cantrell seemingly provides missing facts along these lines. But it appears that Cantrell is referencing an entirely different incident, one involving Officer Fitzpatrick, not Merrill. Cantrell states that: "Officer Andrew Fitzpatrick refused to unhandcuff . . . left in cuffs 40 minutes, as I begged him to uncuff to stop the pain this fat elderly man. Unlawful detainment."[7] Pl.'s Opp'n at 6. The problem for Cantrell is that "[a] Rule 12(b)(6) motion tests the sufficiency of the facts and inferences in a complaint, not the sufficiency of the facts and inferences in a . . . memorandum."

---

[7]     It is not clear to me if Cantrell is even alleging that he was the person left in handcuffs.

*Verso Corp.*, 153 F. Supp. 3d at 430–31. I may consider the facts in Cantrell's response "only to the extent they shed light on the facts and theories *actually alleged*" in the Complaint. *Id.* at 430 (emphasis added). Here, Cantrell failed to actually allege any facts relating to the Officer Fitzpatrick handcuffing incident. Thus, Cantrell fails to state an excessive force claim.

### 3.   Section 1983 - Conspiracy

Turning now to Cantrell's conspiracy allegations, Cantrell alleges that Adam Merrill and another officer engaged in a "conspiracy to violate rights" and that Scott Stewart, John Eldridge, Fran Smith, Paul Hansen, Patrick Scott, Christopher Wolongevicz, Cory Iles, and Adam Merrill engaged in a "conspiracy against rights." *See* Compl. at 16. A civil rights conspiracy under Section 1983 is:

> commonly defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."

*Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020) (quoting *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008)). A successful claim for conspiracy under Section 1983 permits co-conspirators to be held "liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Id.* "To establish a civil rights conspiracy, a plaintiff must show 'not only a conspiratorial agreement but also an actual abridgment of some

federally-secured right.' "[8] *Id.* (quoting *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001)). Further, as part of an effort to control "frivolous conspiracy suits" under Section 1983, "federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977).

Here, although Cantrell has sufficiently claimed that his rights under the federal Constitution were abridged by several of the Brunswick Defendants, his Complaint includes only conclusory allegations of conspiracy. He has not pleaded any facts that would show that these Defendants had a conspiratorial agreement among them to inflict harm upon Cantrell. Without factual allegations to support his conspiratorial claims, Cantrell has failed to state a claim for conspiracy. *See Slotnick*, 560 F.2d at 33 ("It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.").

### 4.    Maine Freedom of Access Act

References to the Maine FOAA are sprinkled throughout the Complaint, but Cantrell's FOAA allegations are primarily leveled at Defendant Paul Hansen, the commander of the patrol division of the Brunswick PD. *See* Compl. at 7–8; Compl. Ex. 1 at 10. According to Cantrell, he made multiple FOAA requests of the Brunswick PD, and Hansen (and sometimes others) destroyed some of his requests, suggested

---

[8]    Thus, to the extent that Cantrell bases his conspiracy claims on the Brunswick Defendants' treatment of his Maine FOAA requests, he fails to state a claim for a Section 1983 conspiracy.

that the materials Cantrell was seeking did not exist, and produced videos and documents that Cantrell alleges are redacted or otherwise altered. Compl. at 7–8. The Brunswick Defendants argue that I lack jurisdiction over any appeal relating to the denial of a request for public records under FOAA because the state Superior Court has exclusive jurisdiction over FOAA appeals. Brunswick Mot. at 13 (citing *Copp v. Shane*, No. 2:18-cv-00181-JAW, 2018 WL 6440878, at \*25 (D. Me. Dec. 7, 2018)).

"FOAA's central purpose is to ensure the public's right to hold the government accountable." *Hum. Rts. Def. Ctr. v. Me. Cnty. Comm'rs Ass'n Self-funded Risk Mgmt. Pool*, 2023 ME 56, ¶ 23, 301 A.3d 782 (quoting *Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶ 32, 871 A.2d 523). "In furtherance of that purpose, FOAA 'establishes a general right of the public to inspect and copy public records.'" *Id.* (quoting *Doyle v. Town of Falmouth*, 2014 ME 151, ¶ 8, 106 A.3d 1145). Under FOAA:

> Any person aggrieved by a refusal or denial to inspect or copy a record or the failure to allow the inspection or copying of a record . . . may appeal the refusal, denial or failure within 30 calendar days of the receipt of the written notice of refusal, denial or failure to the Superior Court . . . for the county where the person resides.

1 M.R.S. § 409(1).

It is true that "[t]he Maine statute makes it plain that the Superior Court of the state of Maine has exclusive jurisdiction over FOAA appeals." *Copp*, 2018 WL 6440878, at \*25. But as this Court recognized in *Copp*, that only means "that a stand-alone FOAA count does not belong in federal court." *Id.*; *see Light v. Town of Livermore*, No. 1:21-cv-00266-JAW, 2022 WL 4016809, at \*33 (D. Me. Sept. 2, 2022) ("This District routinely remands FOAA cases back to state court when the Court has

dismissed a plaintiff's federal claims giving the court jurisdiction."). Given that I am allowing some of Cantrell's federal constitutional claims to proceed, supplemental jurisdiction over Cantrell's FOAA state law claims could be appropriate under 28 U.S.C. § 1367. However, "Section 1367(a) provides for supplemental jurisdiction over only those claims 'that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy under Article III.' " *Sevelitte v. Guardian Life Ins. Co. of Am.*, 55 F.4th 71, 86 (1st Cir. 2022) (quoting 28 U.S.C. § 1367(a)). "To satisfy this standard, claims must derive from a common nucleus of operative fact with the claim satisfying original jurisdiction." *Id.* (internal quotation marks omitted). Here, Cantrell's FOAA-based claims are unrelated to the substantive Section 1983 claims that bring his case under federal jurisdiction. Accordingly, the FOAA claims are dismissed without prejudice. If Cantrell wishes to pursue his FOAA claims, he is free to file them in the appropriate Superior Court of the State of Maine.

### 5.   Remaining Claims

Cantrell briefly mentions that some of the Defendants committed fraud and violated the ADA. Even read generously, the Complaint is devoid of any factual allegations that could support such claims, so they are dismissed.

### D.   Qualified Immunity

Officer Iles and the individual Brunswick Defendants argue that dismissal is warranted because they are entitled to qualified immunity on Cantrell's claims that his constitutional rights were violated. Brunswick Mot. at 17–18; Iles Mot. 6.

Under the doctrine of qualified immunity, when government officials are sued in their individual capacity, they are immune from damages claims unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.' " *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Under Cantrell's version of the facts, he was filming police officers as they were performing their duties on the streets of Brunswick, and I have already concluded that Cantrell sufficiently stated a claim that the officers' actions—trying to prevent him from recording and retaliating against him—violated Cantrell's First Amendment rights.

"Whether the right was clearly established depends on '(1) the clarity of the law at the time of the alleged violation, and (2) whether, given the facts of the particular case, a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights.' " *Gericke*, 753 F.3d at 5–6 (quoting *Glik*, 655 F.3d at 81). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.' " *Wesby*, 583 U.S. 48 at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). My "task is to determine 'whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional.' " *Gericke*, 753 F.3d at 6 (quoting *Glik,* 655 F.3d at 81).

For more than a decade, the First Circuit has held that "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by

the First Amendment." *Glik*, 655 F.3d at 85 (affirming the denial of police officers' motion to dismiss on qualified immunity grounds). Further, if a citizen is "exercising a clearly established First Amendment right, then it is in turn clearly established that the police could not retaliate for such activity." *Gericke*, 753 F.3d at 6–7.

What I cannot tell at this motion-to-dismiss stage is whether any of the police officers involved in the events giving rise to Cantrell's First Amendment claims faced circumstances—such as legitimate safety reasons—that could have justified the imposition of "reasonable restrictions on the exercise of the right to film." *Id.* at 7. I recognize that qualified "immunity is to be resolved at the earliest possible stage in litigation" in order to "prevent the unnecessary litigation of claims from which public officials are immune." *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011) (internal quotation marks omitted). But at this early stage in the litigation with minimal facts before me, I cannot say that the police officers are entitled as a matter of law to qualified immunity on Cantrell's First Amendment claims. *See Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage.").[9]

---

[9]     In his separate motion to dismiss, Officer Iles points to a recent Fourth Circuit case to argue that Iles did not violate clearly established law when he ordered Cantrell to move back twenty-five feet from the scene or else be arrested. Iles Mot. at 13–14 (citing *Hulbert v. Pope*, 70 F.4th 726, 736–38 (4th Cir. 2023)). But the Fourth Circuit in that case was considering the qualified immunity question on an appeal from summary judgment, not a motion to dismiss. In fact, at the motion-to-dismiss stage in that case, the district court determined that it "require[d] additional factual information" to ascertain whether the plaintiff's First Amendment rights had been violated and whether the right to film was clearly established at the time, so it denied the officers' motion to dismiss on qualified immunity grounds. *See Hulbert v. Pope*, No. CV GLR-18-0461, 2019 WL 1409707, at *7

### E.    Town of Brunswick

As for the claims against the Town of Brunswick, the Brunswick Defendants argue that Cantrell does not plead any factual allegations against the Town. Cantrell states only that the "entire department" violated the "prohibition against retaliation and coercion," and he cites to a provision of the ADA. Compl. at 16. I agree with the Brunswick Defendants that Cantrell has not stated a claim for retaliation or coercion under the ADA, so to the extent he is asserting such a claim, it is dismissed.

Cantrell's Town-directed claims might, however, be premised on what he alleges are violations of his First Amendment rights. "A municipality may be held liable under 42 U.S.C. § 1983 for constitutional violations committed pursuant to a municipal custom, policy, or practice." *Cohen v. City of Portland*, No. 2:21-cv-00267-NT, 2023 WL 8187213, at *12 (D. Me. Nov. 27, 2023) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). A town's decision "not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" in limited circumstances if the

---

(D. Md. Mar. 28, 2019). It is likewise premature here to conduct the qualified immunity analysis given the lack of a factual record.

In a footnote, Officer Iles makes the additional argument that because the Plaintiff failed to sign his complaint there is no proper pleading before me, which is an independent basis for dismissal. Iles Mot. at 1 n.2. Under Rule 11 of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented," and the Court "must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." Fed. R. Civ. P. 11(a). Because "Rule 11(a) provides that an unsigned paper will not be stricken for lack of signature if it is corrected promptly," *see de Aza-Paez v. United States*, 343 F.3d 552, 552 (1st Cir. 2003), I am not dismissing Cantrell's complaint based on this technical error. I am, however, calling Cantrell's attention to the missing signature on page 5 of his Complaint so that he may promptly correct the omission. If he fails to refile with a proper signature as required by Rule 11 within fourteen days of this Order, he risks having his Complaint stricken and the case dismissed.

plaintiff shows "deliberate indifference" by the town. *Johnson v. City of Biddeford*, 665 F. Supp. 3d 82, 122–23 (D. Me. 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)), *aff'd,* 92 F.4th 367 (1st Cir. 2024). For such a claim to be successful, the town's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.' " *Connick*, 563 U.S. at 61 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To demonstrate deliberate indifference, "a plaintiff typically must show a 'pattern of similar constitutional violations by untrained employees.' " *Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019) (quoting *Connick*, 563 U.S. at 62).

Here, as discussed above, Cantrell has sufficiently alleged that several different officers on different occasions have interfered with Cantrell's First Amendment right to record police activity or retaliated against him. While Cantrell himself does not expressly allege that the Town failed to train its police officers, his allegations support an inference that the pattern of similar constitutional violations is attributable to a lack of officer training. For example, Cantrell alleges that Officer Fitzpatrick violated his First Amendment rights in October of 2020 and that Chief Stewart acknowledged as much and disciplined Fitzpatrick for the transgression. But then in 2021 and 2022, other officers either continued to resist Cantrell's recording or retaliated against him for his reporting. Cantrell's alleged timeline of events plausibly could show that, even though the Town was on notice since the fall of 2020 that its officers may not understand the contours of the First Amendment right to

record, the Town failed to adequately train its police force on the issue as evidenced by the fact that officers continued to put that constitutional right at risk.

Cantrell has a heavy burden ahead of him to establish deliberate indifference on the part of the Town. *See Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998) (noting that "[t]he liability criteria for 'failure to train' claims are exceptionally stringent"). But at this motion-to-dismiss stage, he has alleged enough of a pattern of constitutional violations to plausibly state a claim for municipal liability so it would be premature to dismiss the Town from the lawsuit at this juncture.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Kristin Collins's motion to dismiss (ECF No. 22), **DENIES** Defendant Cory Iles's motion to dismiss (ECF No. 23), and **GRANTS IN PART** and **DENIES IN PART** the Brunswick Defendants' motion to dismiss (ECF No. 24). Defendants Judith Bean, John Eldridge, Brian Funke, Paul Hansen, Adam Merrill, Frances Smith, Thomas Stanton, Christopher Wolongevicz, and the Brunswick Police Department are dismissed from this action.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 29th day of April, 2024.

27